# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TILOT OIL, LLC,

        Plaintiff,

v.                                                   Case No. 09-CV-210

BP PRODUCTS NORTH AMERICA, INC.,

        Defendant.

## ORDER

On May 13, 2011, defendant BP Products North America, Inc. ("BP") filed a Motion to Compel (Docket #53) seeking a court order requiring plaintiff Tilot Oil, LLC ("Tilot") to execute an authorization allowing the State of Wisconsin to provide certain discovery. In this action, Tilot has brought suit against BP under the Resource, Conservation, and Recovery Act ("RCRA") as well as in tort for alleged groundwater contamination that has migrated onto Tilot's property and affected the use of one of Tilot's buildings. Tilot has alleged that petroleum found in this groundwater has made the basement of a particular building unusable and threatens the health and safety of Tilot employees. During discovery, Tilot produced an Industrial Hygiene Consultation Report ("Consultation Report") prepared by the University of Wisconsin – Madison's WisCon Program ("Wisconsin"). Kim A. Dietz ("Dietz"), a University of Wisconsin employee, drafted the Consultation Report. Since production of the Consultation Report, BP has sought all documents related to the report, including the underlying WisCon file, as well as the deposition of Dietz.

Tilot initially responded that it did not have control of the underlying WisCon file, and Wisconsin itself refused to produce the file or Dietz for a deposition without the authorization of Tilot. Tilot in turn has refused to authorize the disclosures, leading to BP's filing of this motion to compel.

Because Tilot has failed to show that BP is not entitled to the discovery at issue, the court will grant BP's motion. Discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense," and it need not be admissible at trial so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A party may move the court for an order compelling discovery where the nonmovant fails to respond that inspection of materials will be permitted as requested. Fed. R. Civ. P. 37(a)(3)(B)(iv). There is no dispute that the discovery sought is relevant. Tilot makes essentially three arguments as to why it should not be compelled to execute the authorization: (1) the underlying materials are protected from disclosure by regulation; (2) the relationship between Tilot and Wisconsin is privileged; and (3) the material is analogous to facts held by an expert retained for trial preparation and, therefore, not subject to discovery.

I. **PROTECTION BY REGULATION**

Tilot first argues that the regulations covering on-site consultations prevent Wisconsin from disclosing the underlying materials and, therefore, Tilot should not be compelled to authorize their production. Under U.S. Occupational Safety and

Health Administration ("OSHA") regulations, OSHA is permitted to enter cooperative agreements with states in order to use state personnel to provide consultative services to employers regarding health and safety issues. *See* 29 C.F.R. § 1908.1(a). Those regulations also place confidentiality restrictions on state agencies which perform such consultations. The consultation must result in a written report that, because it "contains information considered confidential, and because disclosure of such reports would adversely affect the operation of the OSHA consultation program, the state shall not disclose" it. 29 C.F.R. § 1908.6(g)(2). The regulations further provide that "[t]he consultant shall preserve the confidentiality of information obtained as the result of a consultative visit which contains or might reveal a trade secret of the employer." 29 C.F.R. § 1908.6(h)(1). Moreover, "[d]isclosure of consultation program information which identifies employers who have requested the services of a consultant would adversely affect the operation of the OSHA consultation program as well as breach the confidentiality of commercial information not customarily disclosed by the employer. Accordingly, the state shall keep such information confidential." 29 C.F.R. § 1908.6(h)(2).

Aside from pointing out these regulations, Tilot generally argues that neither the Consultation Report, nor its underlying materials, should be used as evidence in this case, and that compelling such discovery would defeat the OSHA program's goals of encouraging voluntary health and safety consultation. First, as BP points out, the question of admissibility at trial is separate from the question of whether

materials are discoverable.  Thus, Tilot's protestation that these materials, including the already-disclosed Consultation Report, should not be used as evidence has no bearing on the discovery issue the court is confronted with.  Second, nothing about the confidentiality regulations establish that the material in question is not discoverable through Tilot.  The regulations speak of the consultant's duty to keep reports and underlying materials confidential; they do not speak to whether the employer itself may withhold such materials during discovery.[1]

Moreover, Tilot has concluded, but not demonstrated, that producing the materials in question would in fact defeat the goals of the regulations.  The regulations focus on keeping normally non-disclosed commercial information as well as trade secrets confidential in an effort to assure employers that engaging in voluntary consultation will not inadvertently harm them through later disclosure by the consultant.  The Consultation Report itself has already been disclosed, and thus any commercial information or trade secrets that might normally be of concern have likely already been disclosed.  Tilot has not argued otherwise.  Further, there is no reason to believe that allowing discovery, particularly after disclosure of the Consultation Report, will hamper the OSHA consultation program.  The primary concern behind disclosure is that employers will avoid engaging in consultation if

---

[1] Though the WisCon materials aside from the Consultation Report are not directly in Tilot's possession, they are within its control and thus potentially subject to production. Fed. R. Civ. P. 34(a)(1); *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993) (citing to Eleventh and Third Circuit cases explaining that "control" encompasses legal right to obtain documents requested upon demand); *see also, e.g., Comeau v. Rupp*, 810 F. Supp. 1127, 1166 (D. Kan. 1992).  As the regulations note, the employer is entitled to the report.  29 C.F.R. § 1908.6(g).

they know that the consultant will simply disclose the consultation and the results upon a Freedom of Information Act or similar records request. The fact that an employer consulted in the first place is likely to carry a negative connotation, as would any potentially negative findings in the report. However, once those facts have already been disclosed voluntarily by the employer, the concern over deterring employer participation is eliminated. Were this a case in which the Consultation Report had not been disclosed either, the analysis might differ, but the court is not confronted with that situation. Thus, because the regulations impose a duty only upon OSHA and the State, and because the policy underlying the confidentiality regulations is inapplicable in this situation, the regulations provide no reason that the materials BP seeks ought not be produced.[2]

## II. PRIVILEGE

Relatedly, Tilot next argues that the consultation relationship between it and Wisconsin is privileged and, therefore, the materials at issue fall outside the scope of discovery. As noted previously, discovery is permitted only as to nonprivileged matters. Fed. R. Civ. P. 26(b)(1). Federal Rule of Evidence 501 recognizes that privileges found in the common law may apply under the rules. Fed. R. Evid. 501. Thus, courts are permitted to develop rules of privilege "on a case-by-case basis," however, such authority must be exercised carefully. *Univ. of Pa. v. Equal Emp't*

---

[2]To the extent that the underlying WisCon file contains trade secrets not found in the Consultation Report, Tilot remains able to move this court for an appropriate protective order. *See* Fed. R. Civ. P. 26(c)(1)(G).

*Opportunity Comm'n*, 493 U.S. 182, 189 (1990). A new privilege must "promote[] sufficiently important interests to outweigh the need for probative evidence." *Id.* The asserted privilege must also serve a public end. *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996).

In *Jaffee*, for example, the Supreme Court recognized a psychotherapist-patient privilege, noting that the privilege is "rooted in the imperative need for confidence and trust" because effective therapy relies on such in order for the patient to make frank and complete disclosures. *Id.* at 10. The mere possibility of disclosure, the Court wrote, could impede successful treatment. *Id.* Moreover, the Court found the privilege served a public end by facilitating appropriate treatment and noted that "[t]he mental health of our citizenry . . . is a public good of transcendent importance." *Id.* at 11. The Court then found that the evidentiary benefit from denying the privilege would be modest because the evidence would be unlikely to exist without the privilege. *Id.* at 11-12. The Court also found persuasive the fact that all fifty states had enacted laws recognizing the privilege. *Id.* at 12.

It is also worth pointing out that there is a distinction between confidentiality and privilege. *See* 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5:3 (3d ed. 2007) (duty of confidentiality generally broader than evidentiary privilege). In *University of Pennsylvania*, the Court declined to create a privilege in academic peer review materials, relying primarily on the fact that Congress had not created the privilege when it extended Title VII to educational institutions. 493 U.S.

at 189-95. However, amidst its analysis, the Court noted that Congress had considered the issue of confidentiality, and provided some level of protection, but did not see fit to provide a privilege. *Id.* at 192-93.

Here, Tilot argues that the relationship between itself and Wisconsin requires confidence and trust and that a privilege would serve public ends by promoting the improvement of worker safety and health. Tilot goes so far as to assert that, if these materials are available to the public it will not undergo such consultations in the future. With regard to Tilot's private interest, the court disagrees that its relationship with Wisconsin *requires* confidence and trust. The WisCon program provides professional consultation services in order to determine whether working conditions are safe – that is, the goal of the consultation is to determine objectively the level of hazard present in a workplace. The actual performance of this consultation in fact requires no confidence or trust, it requires only the observation of objectively measurable phenomena, for example air sampling in this case. Instead, confidence and trust is more properly viewed as necessary, to some degree, in order to encourage businesses to consult with Wisconsin in the first place. This may relate to achievement of a more general public end of improving worker safety and health, but it has little to do with allowing Tilot and Wisconsin to carry out their consultation relationship once engaged. And even to the extent that confidence and trust are important to achieving the goal of improved health and safety, the confidence provided for by regulation is not the only means by which worker health is

safeguarded. OSHA has authority to investigate and remedy safety and health violations without regard for the confidences of an employer that is not in compliance with the law.³ *See* 29 U.S.C. § 657(a) (authority to enter, inspect, and investigate places of employment); *id.* § 658(a) (authority to issue citations); *id.* § 662(a) (jurisdiction of federal courts, upon petition, to restrain dangerous conditions or practices). Instead, the confidentiality provided for in the consultation process is an incentive to increase voluntary compliance. While such an incentive surely furthers the goals of employee health and safety, it does not do so to the extent that elevating a regulatory guarantee of confidentiality to a wide-ranging evidentiary privilege is imperative to continued achievement of those goals.

What's more, the circumstances of this case further counsel against creating a new privilege here. Tilot has brought this action in order to remedy alleged contamination of its property that, among other things, presents a potential harm to its employees. Yet, after receiving objective evidence with regard to the safety of working conditions, Tilot seeks to withhold this information. In fact, Tilot's motive for consulting in this particular instance seems slightly questionable given that it instituted this litigation in February 2009 and only performed the WisCon consultation in June 2009. Thus, it seems a stretch to believe that failure to create a new privilege here will disadvantage employee health and safety by discouraging

---

³With the exception of protecting employer trade secrets. *See* 29 C.F.R. § 1903.9.

employers already involved in workplace-safety litigation from voluntarily consulting with the State regarding workplace safety.

Finally, even if such a privilege existed, Tilot would have waived it by disclosing the Consultation Report. While there is obviously no case law concerning waiver of the privilege that Tilot wishes the court to create, generally accepted principles of waiver found in other privileges provide enough guidance to establish that Tilot would have waived any privilege in this instance. Broadly, privileges are waived when the privileged evidence is exposed. *See United States v. Salerno*, 505 U.S. 317, 323 (1992) ("Parties may forfeit a privilege by exposing privileged evidence"). However, disclosure must generally be voluntary and not inadvertent. *See* Paul F. Rothstein & Susan W. Crump, *Federal Testimonial Privileges* §§ 2:28, 2:30, 4:14, 5:19, 7:7 (2d ed. 2004) (discussing waiver of attorney-client, marital communications, executive, and informer's privileges). The attorney-client privilege has some of the most developed law with regard to waiver through disclosure and whether a disclosure is inadvertent. Federal evidentiary rules specifically provide that disclosure of attorney-client communications does not waive the privilege if: (1) the disclosure was inadvertent; (2) the privilege holder took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to correct the error. Fed. R. Evid. 502(b). Prior to creation of Rule 502, many courts looked to a similar five-factor test in determining whether waiver occurred: (1) reasonableness of precautions taken to prevent disclosure; (2) time taken to correct the error; (3)

scope of discovery; (4) extent of disclosure; and (5) overriding issues of fairness. *E.g.*, *United States v. Nat'l Ass'n of Realtors*, 242 F.R.D. 491, 494 (N.D. Ill. 2007); *see also* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.3 (3d ed. 1998).

Here, applying similar principles, the court looks to whether the disclosure was in fact inadvertent, as well as steps taken to prevent the disclosure and to correct it upon discovery. Tilot asserts only that, at the time it produced the Consultation Report, counsel was not aware that the document was privileged, but that the document was marked "confidential" and not intended as a waiver. However, the document was produced on March 12, 2010, and Tilot did not assert the privilege until February 2011. Granted, this fact might play differently if Tilot had been completely unaware of the production, but, as BP points out, one of BP's experts relied on the Consultation Report in his December 2010 expert report, and the Consultation Report was used during four depositions without objection from Tilot. Thus, there is little reason to believe Tilot was completely unaware of the Consultation Report's production until Wisconsin replied to BP that it would not produce the underlying materials. These facts also weigh against Tilot with regard to the reasonableness and time taken to correct the supposed error in production. Further, while Tilot marked the report "confidential," that is not an assertion of privilege, and in fact tends to further show that Tilot was aware that it was producing the document.

At best, Tilot has an argument that it was unaware the proposed privilege existed at all – or that the report was covered by the privilege – but not that it was unaware it had produced the supposedly privileged document. This argument is not sufficient, however, because otherwise there would be no temporal limit on asserting privilege after disclosure; a party who wished to take back the disclosed material would need only argue that it simply had not formed the opinion that the material was privileged at the time of disclosure, not that it was unaware the document had been disclosed. As such, Tilot has failed to persuade the court that it should create a new privilege and, therefore, the Consultation Report and underlying materials are not privileged. And, even were the materials privileged, Tilot would have waived the privilege in this case through voluntary disclosure.

## III. EXPERT RETAINED FOR TRIAL

Lastly, Tilot argues that Dietz is the equivalent of an expert employed for trial preparation and, therefore, facts held by him are non-discoverable. Generally, a party may not discover facts or opinions "held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). Tilot argues only that Dietz is the "equivalent" of such an expert because he was consulted "to educate Tilot about employee health and safety issues." Tilot points to no case law establishing that a state agency employee that performs a consultation under OSHA regulations should be treated similarly to a

retained or specially employed expert. In fact, Tilot explicitly states that Dietz "was not engaged to educate Tilot's counsel for trial," but rather "he was consulted to educate Tilot about employee health and safety issues."

Aside from Tilot's seeming admission that Dietz was not at any time "retained or specially employed . . . in anticipation of litigation or to prepare for trial," the purpose of state consultations under the OSHA program show that such a state employee should not be considered a retained or specially employed expert merely because the consultation issues are also issues in the litigation. As noted in the program regulations, consultations are available at no cost and are intended "to assist [employers] in establishing effective occupational safety and health programs for providing employment and places of employment which are safe and healthful." 29 C.F.R. § 1908.1(a). Both the concepts of retainment and employment generally contemplate some form of payment. While that need not always be the case, the fact that Wisconsin provided consultation at no cost and ostensibly for the purpose of assessing and improving worker health and safety rather than to prepare Tilot for litigation or trial shows there is no reason to equate the consultant with an expert retained or employed specifically for a lawsuit. That the focus of the consultation relates to issues also relevant to the litigation does not change this analysis. Mere relevance to a lawsuit cannot transform discoverable facts into non-discoverable material.[4]

---

[4]In fact, relevance is a hallmark of discoverable material.

Moreover, the purpose underlying discovery protection of non-testifying experts and known facts does not support the analogy pressed by Tilot. The purpose of such protection is to avoid deterring parties from thoroughly preparing a case, particularly through the non-testifying expert's contribution to developing pretrial strategy and, accordingly, contribution to attorney work product. 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2032 (3d ed. 1998). Additionally, without protection, a non-testifying expert's *opinions* might be later brought to light at trial, adverse to the party that retained the expert, and given greater weight simply because the party in question retained the expert. *Id.* These concerns, however, are not applicable where, as here, the "expert" in question has conducted objective scientific testing of hazards in the work environment, rather than providing opinion or insight used to actually prepare the case. Instead, an expert such as Dietz is much more akin to a source of objective fact than expert opinion. And, while Rule 26 also protects facts known by a non-testifying expert, the thrust of the rule is aimed at experts that provide strategy-forming advice and consultation, not professionals performing their job within the operating procedures of a state program. Thus, the court finds no reason to hold that the materials at issue are non-discoverable per Rule 26(b)(4)(D).

## IV. CONCLUSION

In sum, Tilot has not established that the materials related to the Consultation Report are non-discoverable, including the deposition of Dietz. OSHA regulations

relevant to the consultation program do not, of themselves, establish that the materials are non-discoverable. Nor is the consultation relationship between Tilot and Wisconsin privileged such that the materials are non-discoverable. Finally, Tilot's brief argument attempting to characterize Dietz as analogous to a retained or specially employed, non-testifying expert does not succeed. As such, because Tilot has failed to establish that BP is not entitled to the requested discovery, and has not produced such discovery, the court will grant BP's motion to compel.

Accordingly,

**IT IS ORDERED** that the defendant's Motion to Compel (Docket #53) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the plaintiff shall execute the authorization attached to the affidavit of Kathryn R. Downey as Exhibit G (Docket #56-7).

Dated at Milwaukee, Wisconsin, this 3rd day of August, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge